Good morning, Your Honors. Catherine Young for Christian Hernandez. I will try to reserve some time for rebuttal. Mr. Hernandez challenges this 30-year sentence, and the first issue I want to touch upon is the 2,000-foot residency restriction, and I would like to address the government's letter which was filed regarding the Lopez case recently. And I wanted to point out that the Lopez case is somewhat distinguishable, given the fact that this Court found that Lopez acquiesced in the restriction, and in fact, the hearing which is on PACER, the transcript of the hearing on PACER, reflects that the District Court read the restriction and asked if counsel and the defendant in that case agreed to the restriction. The defendant and counsel said we had no objection to the restriction. So Lopez is distinguishable. I also wanted to turn to the status of the California litigation on the residency restriction and some of the cases EJ, Pham, and Taylor which are referenced in the reply brief. In California, essentially, the residency restriction is not being enforced. In EJ, as cited in the reply brief, the California Supreme Court remanded to several trial courts for evidentiary hearings regarding whether there were, in fact, any compliant housing available under the restriction. And it stayed application of law as to petitioners, and in fact, everyone who is subject to the law is getting a stay. In Los Angeles County, probationers are routinely requesting stays and being granted. The issues in California are whether the residency requirement impinges on the right to travel, the right to live with one's family under the California Constitution, and whether it's not reasonably related to the purpose of rehabilitation, is overbroad, and violates due process. Now in San Diego, the California Court of Appeal in Taylor in September last year cited in our briefs issued a decision that the law unconstitutionally restricted the right to travel and struck it down. The evidentiary hearing in San Diego concluded there were virtually no residences that complied with the law. This year, in January, the California Supreme Court has decided to review Taylor, but briefing in that case is not yet due. Meanwhile, in the Pham case, also cited in the papers. Can I ask, counsel, if you could continue, but in all of those cases, did the defendant object to the condition? I can't, I don't honestly know, Your Honor. I apologize. I'm sympathetic to your argument, but I'm sort of stuck with the fact that we're reviewing only for plain error in past, at least unpublished decisions, we have said under plain error review, this is okay. This identical supervised release condition is okay. So I guess if you could address why under plain error review the outcome here should be different, that would be helpful for me. Thank you, Your Honor. I appreciate that. One caveat, or one additional question to go with it. You are not asking, as in Rudd, simply for a remand. You are asking to disqualify the condition. Is that right? And answering Judge Watford's question, I'd like to know, what are you asking for? Well, I think that would be the case, Your Honor. There's a recent case, and the name escapes me right now, but I think it's in the papers, in which the court struck down the 2,000-foot residency restriction, went back to the district court, and the district court said, well, then I'll impose a 200-foot restriction, and that was, again, struck down. Because, and I think, I understand Your Honor's concern about the fact that there was no objection in this case, and there are cases upholding it on plain error, but I think those cases don't have the benefit of the recent California developments, which establish why it is plain error, why it is such a violation of the rights. And some of the violations that I've cited that have been found in California go to why it's plain error in this case, why it does violate Mr. Hernandez's rights, even though, unfortunately, there was no objection at trial. It can't be constitutional to impose a restriction on him that doesn't allow him any place to live. And, in fact, as cited in the briefs, in San Diego, parole officers were telling their parolees to live on the riverbank, because there was no compliant housing available. But I think that's why it goes to the fact that the cases in which plain error, the condition that's been upheld on plain error, were done before we had the benefit of all these evidentiary hearings in the development in California, showing that there simply is no place for these people to live. They can't move. They might be forced. They can't move because they can't find a place. They might be forced to move because, as cited in the briefs, parks are being developed all over the place, and every time there's a park that's placed next to one of their residencies, they might be forced to leave. But I did want to just continue, if I've responded to the plain error question. With respect to the development in California, in Los Angeles, there's also been ordered an evidentiary hearing as to whether there's any compliant housing in Los Angeles. If I can ask you this. Sorry. He has a 30-year sentence, right? Yes, he does, Your Honor. That's a long time away. Yes, exactly. A startling long time. Yes. I don't know how we could do this, but as a district judge, it seems that the ultimate determiner should be the probation officer and the district judge when he, in fact, has been released. Because who knows what the conditions will be 30 years from now. There may be more. There may be less. And my point is, it seems to me that with competent and capable counsel presenting these kinds of contentions to the judge who ultimately supervises the person on supervised release, the judge basically is a probation officer. And why don't we simply leave it to whoever the judge is then who gets this case 30 years from now when he comes out? No, I understand, Your Honor. Obviously, circumstances will be very different. But I think we have to evaluate the condition. We have to evaluate whether the condition was appropriately applied in this case based on what we know at the time. But I understand that. But for the plain error review, I have no problem. So you vacate it, wait until he comes out, and send him on his way. No, I understand, Your Honor. For the plain error issue, I'm not sure. What? Presumably, he can move to another way of getting at the same thing would be to say, well, we're not going to eliminate it now in plain error, but he can move to modify the condition. Yes, Your Honor. Sorry. I understand that. And that is always an option. Now, one of the problems with that is that I think there have been cases addressing that issue because then the burden of proof shifts. With respect to the imposition of the condition, the government has the burden of proof to show that it's appropriate. When you're seeking a modification, then the burden shifts. So is it appropriate to impose a condition which may be unreasonable and then require the defendant to bear the burden of proof as to whether it's appropriate? But I don't think that's where the absence of an objection comes in, right? I understand, Your Honor. Okay. I understand that issue. Unless there are any further questions on that issue, I wanted to touch briefly on another issue, which is the restitution issue. I won't go into all the objections that we had to the calculations of restitution because the government also has submitted a letter saying that it was incorrectly calculated. So I'll wait to address that issue until after we hear from the government. And unless there are any further questions, I'd like to reserve some time for rebuttal. That's fine. Thank you. Thank you, Your Honor. Thank you. May it please the Court. Laina Morton-Owens on behalf of the United States. Defendant Christian Hernandez received a low-end guideline sentence for repeatedly sexually assaulting a then-5-year-old de facto niece and documenting that through producing child pornography. The defendant has appealed multiple issues of the imposition of the low-end guideline sentence. The first one that he appeals goes to the imposition of a two-level enhancement under 2G2.2b5. Can I address the residency restriction first? Absolutely. As to the residency restriction, I think that the Court has clearly focused on the right point, which is this is a plain error review. What is the state of our law? I mean, I know Red was a remand. There was a representation made that there are cases that have actually disapproved this. Are there any cases that have actually disapproved it? The only cases that I have seen that have disapproved, and they haven't really disapproved because Red remanded it, Collins in some respects disapproved of the idea of such a restriction being imposed, but both of those cases were dealing with when a defendant had objected to the imposition of the restriction, and here there was no objection. To ask the Court at that time in front of the judge, I mean, it seems to me that the plain error standard has a lot less force here or the objection requirement than in many instances, really for the reasons we've been exploring, which is this isn't screwing up a trial or anything. It's something that's not going to even happen for 30 years. So what's the difference? I mean, why should we not straighten it out or at least ask the district judge to take another look at it? It's not embedded in anything else. It didn't, so he didn't object it to begin with, but it's not coming into effect for 30 years anyway. True, Your Honors, but when you look at what the court, the information that the district court had at the time and the idea of why we imposed plain error review, the district court knew at the time that this was an individual that had. Then why don't we just send it back and say, you know, there's been a lot of water under the bridge since then, and why don't you look at it again? Period. Because remanding a case like this that involves victims as this one did would not only be judicially inefficient to send it back at this time to evaluate this record when is the court. No, only on that issue. Only as to that issue. Still, Your Honors, I believe that remanding it for, it would be remanded under a plain error review to say that the court made a mistake, but this court didn't make a mistake. This court didn't make a mistake at all. This defendant had a. Well, what if, in fact, I realize this has not been established in this case, but what if, in fact, when he starts serving this term 30 years from now, he can't live in any urban area anywhere, any settled community in the entire state of California? Then there is a mechanism by which the supervising officer at that time and the defendant at that time and the court at that time. Isn't there something excessively draconian about that? If you accept that proposition, can this, as a hypothetical, I realize because it's not before us, but can this restriction be upheld on, I don't know, what kind of due process grounds, fundamental fairness? Yes. Aside from the 3553A factors. Yes, what you're talking about are individuals that have a sexual attraction to children. By saying that they shouldn't be within a specific radius. It depends what the specific range is. That's what's wrong here. It isn't the idea of having a range. It's the idea of having a 2,000-foot range where, you know, which makes it applicable, according to the records that have been established in the California cases, likely to just about every place. And moreover, as to which the danger becomes, you know, fairly attenuated. Or at least no more attenuated than having him live at all. I mean, if he can walk 2,000 feet, he can walk 3,000 feet. Where did this provision come from in this case? Was it in just a standard suggestions by the probation officer or where did it come from? Yes, it came from the probation officer in these types of cases. Boilerplate, right? Cookie-cutter boilerplate. I'm not sure that it was cookie-cutter boilerplate, but it was absolutely a condition that was imposed in these types of cases. But there was no issue about that. No, and when the court imposed it, no one objected to it, despite the fact that this defendant had that opportunity and had very competent counsel. And that same counsel objected to many other things. What if we were to vacate taking the position on its face it is excessive? Simply a 2,000-foot exclusionary zone is simply far in excess of what is necessary to accomplish the objectives of the exclusion, which is to keep this person away from contact with young kids. And with all respect to the court, it's unclear how that could be done in this case on this record. There is no empirical data, not in Moseley, not in Taylor, that seems to speak to in Los Angeles, which, to be clear, we're not even sure this defendant is going to try to live in Los Angeles in 30 years from now. But even if you took this urban area, it's my understanding that the California Supreme Court has yet to make that ruling. And so we're now dealing with incomplete information, information that if defendant had objected to the lower court, that record could have been developed. But he didn't. And so we would be sort of flying in the face of every case that this court has decided since Rudd. But the other thing that's true is that in California, it's a generic provision and the litigation has proceeded generically. So the resources, which are fairly large, to demonstrate what the actual empirical effect of this is, have been used across a range of defendants. If we're going to require every individual defendant to prove this rather complicated set of facts, that seems itself to be an enormous imposition. I mean, can we come to a generic conclusion about this at some point? Potentially at some point, but looking at this case of conduct that occurred in 2010 and in a sentence that was imposed in 2011, it doesn't seem that this is the case that should make that decision. The record wasn't developed in that way. I did want to address the issue of restitution. The government has conceded there was error. To that end, I made a mathematical mistake. And this case should be limited remand to the district court to make a determination of restitution only. And I ask that the court do limit its remand just to make the determination of what restitution should be issued to this particular victim. But generically, not just to your concession of your mathematical error. I'm sorry, Your Honor, I don't understand. What mathematical error exactly are you identifying? When I calculated and submitted it to the court, I calculated based on a certain period of months. When I had meant to calculate it from June through September of a given number of years, I misspoke and said from September to September. Therefore, the mathematical equation, the number I gave the court of $71,280 was wrong. But there are other objections that are being made to the amount of money charged per hour to whether she's really going to do this for that many years and all that. And I assume all of that would be open on remand. Yes, Your Honor. I believe it should be remanded just for the issue of restitution. But from A to Z, everything having to do with it, rather than just a number of months? I believe so, Your Honor. Okay. If the court has other issues or other questions, I can answer. Thank you. Thank you. Thank you, Your Honor. Unless the court has any other issues on the residential restriction, I won't address that. With restitution, I just wanted to comment that I don't think the government should be allowed to bring in new elements of laws other than those that were approved originally to the district court. New elements of law? Well, laws. I'm sorry. If the government claims that there are any new issues or new elements of laws that the government now wants that the victim should now be entitled to, I think it should be limited to the laws that was alleged and claimed properly. Why not? Because her circumstances might have changed. I assume she's still very young. The victim is probably not even a teenager yet. When did these events happen? I can't remember. I think they were five years before 2005. 2005 or something like that? Okay. So she's still a very young child. Okay. But why not? Well, I think the laws, and I actually don't have it in front of me. I can brief it if necessary. I don't know that it's necessary in this proceeding, but I don't think that the government is entitled to go back and ask for new issues or new items of laws. Why shouldn't that be up to the district judge? You can make your objection there and say, Judge, time out. It could be. I think, though, that I've dealt with this issue before and that it's limited to what was presented at the time. Okay. But I haven't researched it in connection with this case, so I'd be happy to do so if that's an issue. My own instinct is to let the district judge make his or her mind up about it. That's where the case will be in front of that judge, and if you're unhappy with what's done, come back. Thank you, Your Honor. Rather than this court sort of dictating to the court, district court, you've got to do it this way rather than the other way. I understand, Your Honor. Okay. Unless there are any further questions. Thank you. Thank you very much. Thank you both for a useful argument. The case of United States v. Fernandez is submitted.
judges: Carr, Berzon, Watford